**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
JEANNE A. DUVALL,             )
                              )
          Appellant,          )
                              )
          v.                  )      Civil Action No. 07-223 (RWR)
                              )
KEVIN BUMBRAY et al.,         )
                              )
          Appellees.          )
_____)
```

<u>**MEMORANDUM OPINION**</u>

Debtor Jeanne Duvall appeals the bankruptcy court's decision to overrule her objections to two claims in the amount of $39,756.74, filed against her bankruptcy estate by appellees Kevin Bumbray and Sharon Bumbray Watts. Jeanne[1] argues that the bankruptcy court committed error by ruling that her objections to the appellees' claims were barred by res judicata, the appellees' intended third party beneficiary rights were not rescinded, and it was inequitable for Jeanne to assert the right of recession as a defense in the bankruptcy proceedings. Because Jeanne has not shown that the bankruptcy court decision was erroneous, the bankruptcy court's judgment overruling the debtor's objections will be affirmed.

---

[1] First names will be used for ease of identification among persons sharing a common surname.

-2-

BACKGROUND

In 1982, Jeanne's mother Henrietta Duvall was awarded a $1,200 monthly annuity from the Maryland Workers' Compensation Commission (WCC) as a result of the death of her husband, Edward Bumbray.  (Appellant's Br. at 4.)  Henrietta died in 1990 with only one heir, Jeanne, who was appointed as the personal representative of Henrietta's estate.  (Id.; Ex. 1, Tr. of Bankr. Hr'g on Objection to Claims 1 and 2 ("Hr'g Tr.") at 115.))  The payor of the annuity (Hartford) informed Jeanne that nothing more was payable on the annuity after Henrietta died.  (Appellant's Br. at 5.)  Edward's son Elmer Bumbray told Jeanne that he thought that Henrietta's estate was entitled to continue receiving annuity payments.  Elmer asked Jeanne if he could try to pursue a claim against Hartford as a child of Edward Bumbray. (Id.)  Elmer and Jeanne met with Elmer's lawyer, Barry Chasen, who asked Jeanne to resign as the personal representative of Henrietta's estate, to be replaced by Elmer who would then file a claim against Hartford on behalf of the estate before the WCC. Jeanne claims that she refused to do so because she didn't understand what was going on.  (Id.)

In March 1997, Jeanne again met with Elmer and Chasen.  At that meeting, Elmer made an offer that if Jeanne successfully pursued the WCC claim against Hartford as the personal representative of Henrietta's estate, Jeanne would receive

-3-

16 percent of the proceeds, while Elmer and the other siblings would receive 84 percent. (Appellant's Br. at 5.) Jeanne agreed, and retained Chasen to represent the estate before the WCC. (Id. at 5-6.) The WCC held a hearing, and the claim on behalf of Henrietta's estate was successful. (Id. at 6.) Subsequently, Chasen asked Jeanne to sign checks for the workers compensation proceeds in arrears, in order for Chasen to deposit them. Jeanne hired an attorney of her own, who told her not to sign the checks because the proceeds belonged to the estate, not to Elmer. (Id.) Jeanne's attorney demanded that Chasen provide to him the proceeds from the WCC proceeding to be deposited into Henrietta's estate account. Chasen did not comply, and Jeanne's attorney wrote to Hartford's counsel and demanded that all of the proceeds from the WCC proceeding be sent to him, to be deposited in Henrietta's estate account. The WCC proceeds that Chasen held were delivered to Jeanne's attorney shortly thereafter. (Id.)

In 1999, Elmer sued Jeanne in the Superior Court of the District of Columbia for breach of contract, claiming that he was entitled to the entire amount of the proceeds of the WCC case. (Appellant's Br. at 7; see also Bumbray v. Duvall, Civil Action No. 99-2434 (D.C. Sup. Ct. 1999).) Elmer alleged that under the 1997 agreement ("Agreement") reached between Jeanne and Elmer, Elmer would receive 84 percent of the proceeds generated by the WCC claim (approximately $192,578.40), and Jeanne would receive

-4-

only 16 percent of the proceeds.  (Appellant's Br. at 7.)  Jeanne

defended the case by arguing that her agreement with Elmer called

for proceeds of the WCC claim to be provided to Elmer and his

five siblings to the extent that they were legally entitled to

the WCC proceeds, not to Elmer alone.  (Id. at 8.)

   The jury that heard the contract dispute between Elmer and

Jeanne was instructed to determine whether Elmer brought the WCC

case on his own behalf or on behalf of himself and his siblings.

(Id. at 9.)  The instruction read:

> A party to a contract made in part for the benefit of
> other parties not named in the lawsuit may sue in that
> person's own name without joining the parties for whose
> benefit the action is brought.  If you find that Elmer
> Bumbray brought this action on behalf of some or all of
> his siblings, you should award him the amount of
> damages, if any, that you find to have been rightfully
> due to either [Elmer] or to his siblings.  The fact
> that the action was brought solely by [Elmer] standing
> alone is not a proper basis for reducing the amount of
> money awarded him.  If you find that Elmer Bumbray
> brought this action on his own behalf to use at his
> sole discretion, you may use that fact as a basis for
> reducing the amount of money awarded to [Elmer].
>
> * * *
>
> The measure of damages for a breach of contract is that
> amount of money necessary to place the injured party in
> the same economic position [he] would have been in if
> the contract had not been breached.  To calculate the
> damages, determine the amount of money [Elmer] would
> have received had the contract not been breached.
> [Elmer] has the burden of proving all elements of
> damages by a preponderance of the evidence.  You are to
> award [Elmer] damages to fully compensate him for the
> defendant's breach.  You must not award [Elmer] damages
> for present or future harm which are speculative or
> remote, or which are based on guesswork or conjecture.

-5-

(Appellant's Br. Ex. 9 Claimant's Ex. 5.)  The verdict form asked the jury two questions: 1) to find in favor of either Elmer or Jeanne on Elmer's breach of contract claim, and 2) to answer "on whose behalf did plaintiff Elmer Bumbray bring this lawsuit?" (Appellant's Br. Ex 11, Claimant's Ex. 7.)  The jury returned a verdict in favor of Elmer on question one, and they found that Elmer brought the lawsuit on his behalf, not on the behalf of his siblings.  The jury awarded Elmer $26,960.98.  (Appellant's Br. at 9.)

In 2003, appellees Kevin Bumbray and Watts, Elmer's siblings, filed a complaint alleging breach of contract against Jeanne in the Superior Court of the District of Columbia, seeking portions of the WCC proceeds.  (Appellant's Br. at 10.)  Jeanne stayed that case by filing a voluntary petition for bankruptcy under Chapter 7.  (Id.)  In 2005, Kevin filed in the Bankruptcy Court claim #1 against Jeanne in the amount of $46,973.10, and Watts filed claim #2 against Jeanne in the amount of $46,973.10. (Id. at 3.)  Jeanne objected to both claims, arguing that the claims were prohibited by the statute of limitations, and that the outcome of Bumbray v. Duvall did not justify the claimants' claims, because the appellees were not intended beneficiaries of the Agreement between Elmer and Jeanne.  (Id.)

The Bankruptcy Court held a hearing regarding the claims made by Kevin and Watts.  (Appellant's Br. at 3.)  At that

hearing, the bankruptcy court overruled Jeanne's objections and determined that the claimants were entitled to enforce the oral agreement between Kevin and Jeanne, under which Jeanne agreed that she would be entitled to 16 percent of all proceeds of the WCC enforcement recoveries that she inherited, with the remainder of the proceeds to be divided equally among the other five siblings -- fourteen percent per sibling. (Hr'g Tr. at 114-120; see also In re. Duvall, No. 04-1519 (MT), 2006 WL 3590153 at *1-2 (Bankr. D.D.C. Dec. 6, 2006).) First, the bankruptcy court ruled that the discovery rule applied to preclude the statute of limitations from barring the appellees' claims because they brought their initial action within three years of learning of the existence of the agreement between Jeanne and Elmer. (Hr'g Tr. at 116-117.) The bankruptcy court next determined that the appellees were intended third-party beneficiaries of the contract between Jeanne and Elmer:

> I credit [Jeanne's] testimony that the agreement was -- the 84 percent was to be divided equally amongst the six siblings, and that's how the division came about. Six into 84 percent is 14 percent. There remains another 16 percent for [Jeanne]. Obviously, the parties agreed upon a share for [Jeanne] that would eliminate fractional percentages for the other siblings. The fact that Elmer Bumbray might have believed that or have asserted that 84 percent was wholly for him is irrelevant because I find that the parties had reached an agreement for 84 percent to be divided six ways amongst the six siblings. And that there was indeed a third-party beneficiary contract.

-7-

(Id. at 117.)  The court then determined that the claimants'

third party beneficiary status was not revoked, because the

parties to the Agreement did nothing to revoke the claimants'

third-party beneficiary status:

> [Jeanne] seeks to have the best of all worlds to limit
> Elmer [] to only 14 percent and for the other parties
> not to receive anything, the other siblings not to
> receive anything, and even though the agreement clearly
> was for her to receive only 16 percent . . . .  That's
> just not fair and it wasn't the intention of the
> parties to revoke any third-party agreement that
> existed.  You can't infer that from the fact that
> [Jeanne] now says that there is no such agreement that
> is enforceable, and that [Elmer] took the position that
> it was all for him.  You can't infer from that that the
> two parties, Elmer [] and [Jeanne], reached an
> agreement that they would revoke the third-party
> beneficiary aspects of the contract.  And indeed, what
> happened in the Superior Court was [Jeanne] took the
> position that Elmer was only entitled to 14 percent, he
> wasn't entitled to the full amount and was suing only
> in his own right, not on behalf of the third-party
> beneficiaries, and therefore he ought to be limited to
> 14 percent and that's what the jury concluded.  It
> would certainly be a miscarriage of justice for
> [Jeanne] now to turn around and say that her position
> in the Superior Court should be disregarded and she
> should be treated as having revoked the third-party
> beneficiary status along with Elmer [], who took a
> position that the third-party beneficiary contract
> didn't exist.  That's just not an equitable argument.
> It's distasteful and repugnant to the Court's sense of
> equity.

(Id. at 118-119.)  Finally, finding no privity between Elmer and

the claimants in the Superior court litigation, the bankruptcy

court rejected Jeanne's assertion that the appellees' third-party

beneficiary claims were barred by res judicata.

> But Elmer Bumbray was taking a position adverse to the
> third party beneficiaries who had a right to sue in

-8-

their own interest and were not aware of their right to
sue.  And I don't think that there is privity in those
circumstances.  Elmer was entitled to sue on his own
rights.  He was not obligated to sue in a
representative capacity.  And these siblings are
entitled to sue in their own right in enforcement of
the third-party beneficiary contract.

(Id. at 119-120.)

Jeanne has appealed the bankruptcy court's decision to
overrule her objections.  Kevin and Watts oppose Jeanne's appeal,
and urge affirmance of the bankruptcy court's decision.

## DISCUSSION

A party that is dissatisfied with a bankruptcy court's
ultimate decision can appeal to the district court for the
judicial district in which the bankruptcy judge is serving.
Celotex Corp. v. Edwards, 514 U.S. 300, 313 (1995) (citing 28
U.S.C. § 158(a)).  A district court "may affirm, modify, or
reverse a bankruptcy judge's judgment, order, or decree or remand
with instructions for further proceedings."  Fed. R. Bankr. P.
8013; In re WPG, Inc., 282 B.R. 66, 68 (D.D.C. 2002).  Issues of
law are reviewed de novo.  McGuirl v. White 86 F.3d 1232, 1234,
(D.C. Cir. 1996); Miles v. I.R.S., Civ. Action No. 06-1275 (CKK),
2007 WL 809789, at *3 (D.D.C. Mar. 15, 2007); In re Johnson, 236
B.R. 510, 518 (D.D.C. 1999).  Conclusions of fact are reviewed
for clear error.  Bierbower v. McCarthy, 334 B.R. 478, 480
(D.D.C. 2005)

-9-

I.   RES JUDICATA

Jeanne argues that the bankruptcy court erred by failing to rule that the doctrine of res judicata barred the appellees' claims because the jury in the Superior Court considered and rejected the notion that the appellees were entitled to third party beneficiary claims.  (Appellant's Br. at 10-16.)  The appellees disagree, arguing that the doctrine of res judicata did not preclude their claims because they were not parties to the Superior Court action, because Elmer was not in privity of interest with them when he participated in the Superior Court action, and because the jury in the Superior Court action did not resolve the issue of their third-party beneficiary status in Jeanne's favor.

Under 28 U.S.C. § 1738, "federal courts must give state court judgments the same preclusive effect as would be given by the courts of the state where the judgments emerged." Smith v. District of Columbia, 629 F. Supp. 2d 53, 57 (D.D.C. 2009) (citing Migra v. Warren City Sch. Dist., 465 U.S. 75, 81 (1984)). In the District of Columbia, the doctrine of res judicata precludes the relitigation, between the same parties, of a claim that has previously been adjudicated on the merits.  Walden v. Dist. of Columbia Dep't of Employment Servs., 759 A.2d 186, 189 (D.C. 2000); see also Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC, 569 F.3d 485, 490 (D.C. Cir. 2009).  "A final

-10-

judgment on the merits of a claim bars [litigation] in a subsequent proceeding of . . . claims arising out of the same transaction which could have been raised[.]"  Patton v. Klein, 746 A.2d 866, 869-70 (D.C. 1999).

Jeanne argues that, while the appellees were not parties in the Superior Court case, they should still be bound by the jury's determination because they were in privity of interest with Elmer.  "A nonparty may be considered in privity with a party to the prior action if the nonparty's interests are 'adequately represented by a party to the original action.'"  Lewandowski v. Prop. Clerk, 209 F. Supp. 2d 19, 21-22 (D.D.C. 2002) (quoting Am. Forest Res. Council v. Shea, 172 F. Supp. 2d 24, 31 (D.D.C. 2001)).  However, the bankruptcy court determined that Elmer was not in privity with the appellees, and Jeanne provides no evidence that the bankruptcy court was incorrect in that determination.  Nor does Elmer's claim in the Superior Court action that he was entitled to 84 percent or more of the proceeds to the exclusion of his siblings begin to approach adequately representing the appellees' interests in that action.  In addition, Jeanne misreads the implication of the jury's verdict in that action.  Jeanne asserts that the jury "considered and rejected [the appellees'] claims," because the jury found that Elmer brought the case on his own behalf, not on behalf of the appellees.  (Appellant's Br. at 11.)  However, that determination

-11-

by the jury merely meant that Elmer could not collect the entire
amount that Jeanne owed from the Agreement, not that the jury
believed that the appellees were not third-party beneficiaries of
the Agreement.  The jury was not finding against the appellees;
it was finding against Elmer in his attempt to recover more than
just the portion of the proceeds to which he was individually
entitled under the Agreement.  In other words, the jury
determined Elmer's rights, not the appellees' rights.

II.  RESCISSION

     Jeanne argues that the bankruptcy court erred in determining
that the appellees' rights in the Agreement were not revoked or
rescinded by Elmer and Jeanne.  According to Jeanne, the
appellees only learned of their rights in the Agreement after the
beginning of the Superior Court litigation, during which, Jeanne
argues, the parties took positions inconsistent with the
appellees' position as third-party beneficiaries in the
Agreement, thus destroying their rights.  (Appellant's Br. at 16-
18.)  Jeanne also argues that she terminated the appellees' third
party beneficiary rights by seeking the WCC proceeds.

     "A third party to a contract 'may sue to enforce its
provisions if the contracting parties intend the third party to
benefit directly thereunder.'"  Fields v. Tillerson, 726 A.2d
670, 672 (D.C. 1999) (quoting Johnson v. Atlantic Masonry Co.,
693 A.2d 1117, 1122 (D.C. 1997)).  "Whether the parties so

-12-

intended in this case is a factual issue [to be resolved] by the
trial court." <u>Fields</u>, 726 A.2d at 672.  "The parties to a
contract entered into for the benefit of a third person may
rescind, vary, or abrogate the contract as they see fit, without
the assent of the third person, at any time before the contract
is accepted, adopted, or acted upon by him, and such rescission
deprives the third person of any rights under or because of such
contract." <u>Id.</u> at 672-73 (quoting 17A Am. Jur. 2d <u>Contracts</u>
§ 461).  Contracting parties are free to modify their original
contract, but such modification requires mutual consent. <u>Chang
v. Louis & Alexander, Inc.</u>, 645 A.2d 1110, 1114 (D.C. 1994)
(citing <u>Hershon v. Hellman Co.</u>, 565 A.2d 282, 284 (D.C. 1989)).
"In order to be valid, however, the modification must possess the
same elements of consideration as necessary for normal contract
formation." <u>Herson</u>, 565 A.2d at 283; <u>see also</u> <u>Coulombe v. Total
Renal Care Holdings, Inc</u>., No. C06-504JLR, 2007 WL 1367601,
at * 3 (W.D. Wash. May 4, 2007) (finding that parties intended to
rescind where the defendant provided the plaintiff with a form
relinquishment letter and the plaintiff signed it and returned
it, stating that "[a]n agreement to rescind must itself be a
valid agreement, meaning all parties to the contract must assent
to rescission and there must be a meeting of minds").

     In this matter, Jeanne fails to cite any evidence in the
record that she and Elmer came to any formal agreement or any

-13-

accord to rescind the appellees' third party beneficiary rights
under the Agreement.  Factually, the circumstances Jeanne cites
either did not reflect an intent to rescind or were one party's
unilateral actions reflecting no simultaneous meeting of the
minds between Jeanne and Elmer.  Jeanne's claim before the WCC
for all of the proceeds was in keeping with her Agreement with
Elmer, not a rescission of the siblings' rights.  Her demand to
have Chasen turn over the proceeds for deposit into Henrietta's
estate was also not inconsistent with a later distribution from
the estate to the Bumbray siblings in keeping with the Agreement.
Elmer's demand in his lawsuit for the proceeds certainly met with
no assent from Jeanne, who insisted that the siblings had rights
to the proceeds.  And Jeanne's reversed position in the
bankruptcy proceeding likewise found no consent from Elmer.

   Legally, Jeanne provides no authority supporting her theory
that Elmer rescinded the appellees' third party beneficiary
rights by arguing, in the Superior Court litigation, that he was
the sole beneficiary of the Agreement, or that she rescinded the
Appellees' third party beneficiary rights by demanding the WCC
proceedings in 1997.  See e.g., Arizona v. Shalala, 121 F. Supp.
2d 40, 46 n.4 (D.D.C. 2000) (refusing to address or countenance
an arguments that were raised "without citing any authority").

-14-

III. JUDICIAL ESTOPPEL

Jeanne argues that the bankruptcy court erroneously refused to hear her argument regarding rescission because the bankruptcy court found it inequitable for Jeanne to make that argument. (Appellant's Br. 19-34.)  "Judicial estoppel is an equitable doctrine that prevents parties from abusing the legal system by taking a position in one legal proceeding that is inconsistent with a position taken in a later proceeding."  Kopff v. World Research Group, LLC, 568 F. Supp. 2d 39 (D.D.C. 2008) (citing New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001), and Elemary v. Holzmann A.G., 533 F. Supp. 2d 116, 125 n.6 (D.D.C. 2008)). Judicial estoppel "protect[s] the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  New Hampshire v. Maine, 532 U.S. at 749-50.

Here, regardless of whether the bankruptcy court would have been justified in applying the doctrine of judicial estoppel to preclude Jeanne's argument regarding rescission, the fact is that the bankruptcy court held that rescission did not occur.  In stating that Jeanne's argument was "distasteful, and repugnant to the court's sense of equity," the bankruptcy court did not state that it reached its decision to overrule Jeanne's objection solely because her argument was inequitable.  The bankruptcy court recited the positions taken by the parties in the Superior

-15-

Court litigation as support for its factual findings that no rescission occurred, not to judicially estop Jeanne from arguing about rescission.  In short, Jeanne does not provide evidence of an incorrect determination of law or a clearly erroneous determination of fact sufficient to disturb the bankruptcy court's decision on this or any other issue.

## CONCLUSION

Because the appellant has not demonstrated that the bankruptcy court committed any error, the judgment of the bankruptcy court will be affirmed.  An appropriate Order accompanies this Memorandum Opinion.

SIGNED this 24th day of February, 2010.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge